```
                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE


                               .  Chapter 11
        IN RE:                 .
                               .  Case No. 20-11266(JTD)
        PQ NEW YORK, INC., et al,  .
                               .
                               .  824 Market Street
                               .  Wilmington, Delaware 19801
                    Debtors.  .
        . . . . . . . . . . . . . . .  Friday, September 25, 2020

                  TRANSCRIPT OF TELEPHONIC HEARING
                BEFORE THE HONORABLE JOHN T. DORSEY
                 UNITED STATES BANKRUPTCY JUDGE


        APPEARANCES VIA TELEPHONE:

        For the Debtors:          Mark D. Collins, Esq.
                                  Jason M. Madron, Esq.
                                  RICHARDS, LAYTON & FINGER, PA

        For the U.S. Trustee:     Timothy Fox, Esq.
                                  OFFICE OF THE U.S. TRUSTEE

        For the Official Committee
        of Unsecured Creditors:   Brya M. Keilson, Esq.
                                  Jeffrey Waxman, Esq.
                                  MORRIS JAMES, LLP

                                  Catherine LoTempio, Esq.
                                  Robert J. Gayda, Esq.
                                  SEWARD & KISSEL, LLP




        (Appearances Continued)

        Audio Operator:           Electronically Recorded
                                  by CourtSmart and
                                  Jason Spencer, ECRO

        Transcription Company:    Reliable
                                  1007 N. Orange Street
                                  Wilmington, Delaware 19801
                                  (302)654-8080
                                  Email:  gmatthews@reliable-co.com


        Proceedings recorded by electronic sound recording,
        transcript produced by transcription service.
```

APPEARANCES VIA TELEPHONE:   (Continued)

For LPQ USA, LLC:              Steven J. Reisman, Esq.
                              Wade Glover, Esq.
                              Jerry Hall, Esq.
                              KATTEN MUCHIN ROSENMAN, LLP

For Chubb:                    Michael Lastowski, Esq.
                              DUANE MORRIS, LLP

For Regency Centers, LP:   Cassandra Postighone, Esq.
                              KELLEY, DRYE & WARREN, LLP

Also Appearing:               John Burlacu
                              DONLIN, RECANO & COMPANY, INC.

                              Steven Fleming
                              Brian Koluch
                              PRICEWATERHOUSE COOPERS, LLP

INDEX

|                                                                          | Page |
|--------------------------------------------------------------------------|------|
| EMERGENCY MOTION RE:  TAXES                                               | 5    |
| MOTION FOR RELIEF FROM AUTOMATIC STAY RE:  ZURICH                         | 14   |
| SECOND AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION      |      |
|     Comments by Mr. Madron                                               | 16   |
|     Presentment/Argument by Mr. Waxman                                   | 18   |
|     Comments by Mr. Lastowski                                            | 33   |
|     Court Decision                                                       |      |

| EXHIBIT                          | IDENT. | EVID. |
|----------------------------------|--------|-------|
| Fleming First-Day Declaration    |        | 22    |
| Fleming Confirmation Declaration |        | 22    |
| Burlacu Declaration              |        | 24    |

4

1          (Proceedings commence at 10:02 a.m.)

2                THE OPERATOR:  Recording has begun and we are now

3    live.

4                THE COURT:  Thank you.

5                Good morning, everyone.  This is Judge Dorsey.

6    We're on the record in PQ New York, Inc., Case Number 20-

7    11266.

8                I'll go ahead and turn it over to debtors' counsel.

9                MR. MADRON:  Thank you very much, Your Honor.  Good

10   morning.  This is Jason Madron of Richards, Layton & Finger,

11   on behalf of the debtors and debtors-in-possession.

12               THE COURT:  Mr. Madron --

13               MR. MADRON:  (Indiscernible)

14               THE COURT:  -- can you hold on for just one second,

15   real quick?

16               I see there are some -- I see there are some folks

17   trying to get into the Zoom meeting, but we can't identify

18   who you are because you're using just numbers and unknown

19   names.  If we can't identify who you are, we don't let you

20   into Zoom because we've had some people trying to get in,

21   disrupting the proceedings.  So, if you're on CourtCall and

22   you want to be on Zoom, you're going to have to put your

23   proper name into your Zoom meeting ID, so that we can let you

24   in.  Okay.  Thank you.

25               Go ahead, Mr. Madron.

1          MR. MADRON:  Thank you, Your Honor.  Your Honor,

2     again, we'd like to thank Your Honor for accommodating us

3     today for this very important hearing in these Chapter 11

4     cases, a hearing that is the culmination of a material amount

5     of effort on behalf of many folks on the call today.

6          If I may, Your Honor, I will turn to the form of

7     amended agenda that we filed in consultation with Your

8     Honor's chambers yesterday afternoon and take it in order.

9          THE COURT:  Okay.

10          MR. MADRON:  Your Honor, Item Number 1 is the

11     debtors' emergency motion.  As background, on October [sic]

12     22nd of 2020, the debtors filed the emergency motion that's

13     before the Court today, along with a motion seeking to

14     shorten notice, asking that the motion be considered by the

15     Court at this morning's hearing immediately in advance of

16     plan confirmation.  Later, on September 22nd, 2020, Your

17     Honor entered an order granting the motion to shorten and

18     scheduling the emergency motion for hearing today and making

19     the objection deadline to the motion due at this morning's

20     hearing.  And we very much thank Your Honor for accommodating

21     that very tight timing and scheduling for this important

22     matter.

23          Parenthetically, Your Honor, I'll note that, as of

24     the commencement of this hearing, the debtors are unaware of

25     any opposition to the relief requested in the emergency

1    motion.

2           By way of brief overview, the emergency motion

3    seeks to do two things:  First, it seeks to approve two

4    stipulations, one with the City of Alexandria, Virginia, and

5    one with the California Department of Tax and Fee and

6    Administration.  Both stipulations address generally

7    undisputed priority sales tax claims and provide for the

8    stipulated allowance of the priority tax claims in agreed

9    reduced amounts, in exchange for providing the respective

10   taxing authorities with certainty on the timing and assurance

11   of collectability of the compromised claim amounts.

12          As discussed in our motion, Your Honor, given the

13   debtors' extremely limited liquidity, the compromise of these

14   claims conserves precious and important cash to enable the

15   debtors and the creditors' committee to more competently move

16   forward with a successful Chapter 11 plan process.  Without

17   the savings provided to the estates by these claim

18   stipulations, the debtors' challenging cash position would be

19   even more stressed.

20          Second, Your Honor, the emergency motion seeks to

21   increase the cap in Your Honor's final taxes order entered in

22   the earlier days of these cases by a total of $98,000.  So

23   this would be, from $35,000 in the final taxes order, up to a

24   total of $133,000 if the motion is granted.  Put differently,

25   the motion seeks to increase the taxes cap by the amount of

1    the settlement payments called for in the stipulations.

2              (Indiscernible) the initial thirty-five-thousand-

3    dollar cap, the final taxes order requested such a limited

4    cap, as the debtors believed, as of the petition date, that

5    they had already taken care of pre-funding all of their pre-

6    petition priority tax obligations prior to commencing the

7    Chapter 11 cases.  However, Your Honor, now, with the benefit

8    of the bar date established by the Court in these cases, the

9    previously unexpected tax claims of the City of Alexandria

10   and the California Department of Tax and Fee Administration

11   have come to light, and increasing the payment cap set forth

12   in the final taxes order provides the debtors with sufficient

13   court authorization to make the settlement payments called

14   for in the stipulations.

15             If I may halt there, Your Honor, I do have a

16   proffer from Mr. Fleming, who is on the phone with us via

17   Zoom today that I would like to offer in further support of

18   this motion.

19             THE COURT:  Yes, go ahead.  Thank you.

20             MR. MADRON:  Thank you, Your Honor.

21             Your Honor, this is the proffer of Mr. Steven J.

22   Fleming, the debtors' court-approved Chief Restructuring

23   Officer.  He is present at today's hearing through the

24   Court's Zoom video conference link and through CourtCall.

25   And if called to testify, he would testify under the penalty

1    of perjury as follows:

2         Mr. Fleming would testify that he is a principal at

3    PricewaterhouseCoopers, LLP, and the leader of the firm's

4    U.S. business recovery services practice, a position that he

5    has held since 2016, after being a senior member in the group

6    for seven years.

7         Mr. Fleming would testify that he has read the

8    emergency motion that's before the Court for approval today,

9    located at Docket Item 579, and is familiar with its contents

10   and all of the attachments thereto, including the tax claim

11   stipulations.

12        He would further testify that he, and those acting

13   at his direction at PricewaterhouseCoopers, regularly monitor

14   the official claims register maintained in these Chapter 11

15   cases, and that he is generally familiar with any priority,

16   secured, or administrative claims that have been filed

17   against any of the debtors.

18        Mr. Fleming would further testify that he has

19   reviewed and is specifically familiar with the priority tax

20   claims filed by the City of Alexandria and the California

21   Department of Tax and Fee Administration in these cases that

22   are subject to the instant motion.

23        Mr. Fleming will testify that, while the debtors

24   believed, as of the petition date, that they had paid any

25   potentially valid priority tax claims that had arisen prior

1    to the petition date, subsequent to the establishment of the

2    bar date in these Chapter 11 cases, certain taxing

3    authorities, including the City of Alexandria and the

4    California Department of Tax and Fee Administration filed

5    pre-petition priority tax claims against the debtors'

6    estates.  Mr. Fleming would testify that he and those working

7    at his direction at PricewaterhouseCoopers have carefully

8    approved and reconciled the proofs of claim filed by the City

9    of Alexandria and the California Department of Tax and Fee

10   Administration that are subject to the motion before the

11   Court this morning.

12        He would testify that, although there are a few

13   minor discrepancies from the amounts asserted by the City of

14   Alexandria and the California Department of Fee and Tax

15   Administration, that, on the whole, he believes that the

16   asserted liabilities in the claims is consistent with the

17   books and records of the debtors, and that the claims are

18   generally unobjectionable.

19        At the same time, however, Mr. Fleming would

20   testify that the unexpected additional valid priority tax

21   claim liabilities asserted by the City of Alexandria and the

22   California Department of Tax and Fee Administration place a

23   significant strain on the liquidity available in the debtors'

24   estates to fund the pending joint Chapter 11 plan of the

25   debtors and the creditors' committee.

1            As a result of the adverse impact on the debtors'

2    liquidity position and in order to bolster the success of the

3    Chapter 11 plan process in these cases, Mr. Fleming would

4    testify that the debtors reached out to the City of

5    Alexandria and the California Department of Tax and Fee

6    Administration to discuss a potential economic settlement of

7    the respective priority tax claims.

8            Mr. Fleming would further testify that these

9    negotiations did not center on the validity of the claims,

10   which is noted that the debtors generally do not contest.

11   Rather, the negotiations, focused on offering the City of

12   Alexandria and the California Department of Tax and Fee

13   Administration certainty on the collectability of their

14   claims, as well as on the timing of the payment, in exchange

15   for agreeing to compromise the amount of the claims asserted.

16           Mr. Fleming would testify that these negotiations

17   took place at his direction and were conducted at arm's

18   length and with the utmost of good faith.  Mr. Fleming would

19   further testify that the result of these settlement

20   discussions are the claim stipulations that are before the

21   Court for approval today.

22           As set forth in the claims stipulation, the City of

23   Alexandria and the California Department of Tax and Fee

24   Administration have agreed to materially compromise the

25   recovery on account of their claims, in exchange for

certainty that the compromised claims will be paid in full
and will be paid promptly.

Mr. Fleming would further testify that, in his
opinion, entry into the claims stipulations represents the
sound exercise of the debtors' business judgment, and that
the approval of the claims stipulations will conserve crucial
liquidity in the debtors' estates, and will promote a
successful Chapter 11 plan process.  He would further testify
that he believes the economic result achieved by the
stipulations is in the very best interests of the debtors,
their estates, and all parties-in-interest in these Chapter
11 cases.

Finally, Mr. Fleming would testify that, other than
a *de minimis* priority tax claim filed by the State of
Illinois and a handful of priority claims asserted by the
State of New York for interest on account of tax claims that
the debtors paid pre-petition -- which the debtors dispute
and have requested COVID-19 relief through an available
portal with New York -- no other priority sales and use tax
claims appear on the official claims register in the debtors'
Chapter 11 cases; and, therefore, approval of the
stipulations is not discriminatory to other similarly
situated priority tax claim holders who have already filed
claims in these Chapter 11 cases, and it is, thus, a fair and
reasonable result.

1      Consequently, Your Honor, Mr. Fleming would testify

2   that he believes that the approval of the motion that's

3   pending before the Court today achieves numerous beneficial

4   goals for these debtors and their estates.  And as such, he

5   believes the motion should be granted.

6      Your Honor, that concludes Mr. Fleming's direct

7   testimony proffer.  And as mentioned, he is on the line with

8   us today, if Your Honor has questions or if any party with us

9   today would like to cross-examine him.

10      THE COURT:  Okay.  Thank you, Mr. Madron.

11      Is there any objection to the admissibility of the

12   proffer?

13      (No verbal response)

14      THE COURT:  Okay.  The proffer is admitted without

15   objection.

16      Does anyone wish to cross-examine Mr. Fleming?

17      (No verbal response)

18      THE COURT:  Having heard nothing, you can proceed,

19   Mr. Madron.  Thank you.

20      MR. MADRON:  Thank you, Your Honor.

21      Your Honor, so, suffice it to say, and as set forth

22   in the Fleming proffer in support of the emergency motion,

23   the debtors believe that granting the relief requested in the

24   emergency motion is very much in the best interests of the

25   debtors and their estates and would provide material cash

1    savings and important cash savings to the estates, while

2    supporting a successful Chapter 11 plan process.  As such,

3    Your Honor, the debtors respectfully request that Your Honor

4    enter the proposed form of order granting the emergency

5    motion, approving both the claims stipulations, and

6    increasing the pre-petition payment cap set forth in the

7    final taxes order in the amounts requested.

8            With that, Your Honor, I'm certainly very happy to

9    answer any question that Your Honor may have with respect to

10   the motion, the stipulations, or the relief that we're asking

11   for this morning.

12           THE COURT:  I do not have any questions.

13           Is there anyone else who wishes to be heard?

14           MR. FOX:  Yes, Your Honor.  Good morning.  May it

15   please the Court, Timothy Fox on behalf of the United States

16   Trustee.

17           THE COURT:  Yes, Mr. Fox.  Go ahead.

18           MR. FOX:  Good morning, Your Honor.  I just would

19   like to note on the record that I appreciate the debtors

20   making the proffer that Mr. Madron just put on.  That was at

21   least partially in response to informal comments that my

22   office raised when we were advised of the emergency motion.

23   And under the circumstances here, my office has no objection

24   to the relief being sought.

25           THE COURT:  Thank you, Mr. Fox.

1          Anyone else?

2            (No verbal response)

3          THE COURT:  Okay.  I'm satisfied, based on the

4     record and the testimony presented here today, that the

5     requested relief is appropriate, and I will enter that order.

6          MR. MADRON:  Thank you very much, Your Honor.  I

7     believe we have uploaded the order with its attachment for

8     Your Honor's e-signature at the Court's convenience.

9          THE COURT:  Okay.

10          MR. MADRON:  Your Honor, Agenda Item Number 2 is a

11     motion that was filed by the debtors to grant stay relief,

12     really a matter of comfort.

13          One of the debtors' insurers, Zurich, has --

14     there's a law firm defending some ADA and other type of

15     actions against the debtors.  Zurich is responsible, under

16     the policies, to pay the freight for the law firm.  They

17     wanted a comfort order that the automatic stay does not apply

18     and that they can pay the law firm.

19          So, working with counsel to the law firm at Elliott

20     Greenleaf, you know, we filed this motion.  The motion was

21     unopposed.  We filed a certificate of no objection and Your

22     Honor entered an order earlier this week.  We thank you for

23     that.

24          The only reason I bring up this matter is -- given

25     that the order was entered, was to just note for Your Honor

1    that, apparently, the order that was entered, the law firm

2    presented it to Zurich, and Zurich had some comments about it

3    -- you know, I don't want -- to summarize it, you know, more

4    or less not being sufficient specific.  So Elliott Greenleaf

5    and my firm and others are working on an amended and

6    superceding form of order in connection with this matter that

7    will have increased specificity as to the law suits that are

8    at issue, with respect to which the firm will be paid.

9    Again, this firm is not being paid from any cash in the

10   debtors' estates or any property of the estates that's

11   proceeds from insurance policies, and the firm is entitled to

12   them.

13            So I just wanted to give Your Honor a heads-up.  I

14   mean, we anticipate, hopefully, later today submitting that

15   under a certification of counsel for Your Honor's

16   consideration, again, an amended and superseding order that

17   has a little bit more meet on the bones to give Zurich

18   comfort as to what they're paying and that they have

19   authorization to do so and it's not a violation of the stay,

20   so that will be forthcoming.

21            And if Your Honor has questions now, certainly

22   happy to answer them, but I -- you know, we'll make that

23   filing with a redline for Your Honor's consideration.

24            The only thing I'll note is that the law firm that

25   is subject to the motion, that's subject to receive payment,

1    has a fiscal year end of September 30th, so they do have some

2    sensitivity to trying to, you know, get an order that is

3    acceptable to Zurich in advance of then.  So, to further that

4    goal, we will work to get the submission to Your Honor as

5    promptly as possible today, appreciating that it is Friday

6    and we're heading into the weekend.

7              THE COURT:  Okay.  I'll do my best to make sure the

8    partners get their distribution at the end of the ...

9              MR. MADRON:  I'm sure they are most grateful, Your

10   Honor.  Thank you.

11             Your Honor, that brings us then to Agenda Item 3,

12   which is really the main event today.  This is the hearing to

13   consider final approval of the adequacy of the disclosure

14   statement that Your Honor approved on an interim basis in

15   late August, as well as confirmation of the joint Chapter 11

16   plan of the debtors' and the creditors' committee, filed as

17   co-proponents.

18             Your Honor, I'm pleased to -- and Mr. Waxman will

19   do the heavy lifting on the presentation of this matter.  But

20   I am pleased to inform Your Honor that we are before the

21   Court today on a fully uncontested basis.

22             As reflected on the agenda, we did receive one

23   formal written response; we received two informal responses.

24   Working very cooperatively with the creditors' committee and

25   with the responding parties, we were able to achieve a

1  resolution of each of those responses via either addition of

2  language into the second amended plan that we filed -- I

3  believe it was late last week -- or through the confirmation

4  order that has been uploaded for Your Honor's review this

5  morning.

6       So, you know, the result of a lot of hard work by a

7  lot of folks on the phone, and the debtors are certainly

8  grateful of that.  And we're very pleased to be before Your

9  Honor today on an uncontested basis with a plan that the

10  voting tabulation results show was overwhelmingly supported

11  by Class 3 and 4 creditors who were entitled to vote and did

12  vote on the plan.

13       So, having said that, and obviously stating at the

14  outset that the debtors are a hundred percent supportive of

15  confirmation of the plan and believe that, under the facts

16  and circumstances of these cases -- which Your Honor will

17  recall initially we're on track to be Chapter 7 case, and you

18  know, but for a purchaser emerging pre-petition and making a

19  Chapter 11 plan process possible, we wouldn't be here today

20  on this matter.

21       And frankly, even after the cases filed, the case

22  was contemplated, as Your Honor will recall, a sale process

23  that was run on, you know, a reasonable, but tight time

24  frame, to have a quick sale process, you know, on assets that

25  were thoroughly marketed pre-petition.  And then, ultimately,

1    you know, we were originally still looking at a dismissal or

2    conversion scenario as of the petition date.

3              But fortunately, thanks to the hard work of the

4    purchaser, the creditors' committee, the debtors, the

5    negotiations and settlement that was embodied in the sale

6    process involving those parties, some additional cash became

7    available, and it set us on a path to be able to go down this

8    road of a Chapter 11 plan, to get money out to unsecured

9    creditors.  So we're very pleased to be here today with this

10   hard-fought result.

11             So, with that and the debtors' support, I will

12   yield the virtual lectern to Mr. Waxman, who will make the

13   primary presentation on presentation, Your Honor.

14             THE COURT:  Thank you, Mr. Madron.

15             Mr. Waxman.

16             MR. WAXMAN:  Good morning, Your Honor.  Jeff Waxman

17   of Morris James on behalf of the Official Committee of

18   Unsecured Creditors.  Good morning.  I am joined today by

19   Robert Gayda and Catherine LoTempio of Seward & Kissel, our

20   co-counsel, and my colleague Brya Keilson.

21             Your Honor, more often than not, when I'm

22   representing a debtor or creditors' committee in a

23   confirmation hearing, I harken back to a line from Paradise

24   Lost:  "Long is the way and hard, that out of Hell leads up

25   to light."

1          Your Honor, through this bankruptcy process, the

2     debtors, together with the committee, have been able to sell

3     the business, the debtors' business, as a going concern,

4     saving hundreds, if not thousands of jobs, having millions of

5     dollars of potential claims assumed by the purchaser.  And at

6     the end of the day, we stand before the Court seeking

7     approval of the disclosure statement on a final basis and

8     confirmation of a plan which will ultimately yield some

9     distribution to general unsecured creditors.

10          Your Honor, both voting classes have voted to

11     accept the plan, and all objections, whether formal or

12     informal, have been resolved.  So it is with pleasure, as Mr.

13     Madron said, that we are here today with an uncontested

14     hearing.

15          Your Honor, just solely by way of background -- and

16     all of this is set forth in Mr. Fleming's declaration, first-

17     day declaration, as well as in the pleadings in the case --

18     the debtors were a restaurant chain.  They were already

19     having financial issues, but the straw that broke the camel's

20     back was, of course, the COVID-19 pandemic.  When the debtors

21     had filed for bankruptcy, they had already agreed to -- they

22     had already agreed with an affiliate of Aurify Brands for the

23     sale of substantially all of the debtors' assets, and by

24     which they had received financing for the case.

25          After the appointment of the committee, the

1    debtors, the committee, and the purchaser were able to

2    negotiate a settlement that resolved the committee's

3    opposition to the entry of the final order approving the

4    final -- excuse me -- approving the financing motion and

5    approving the sale.  Among other things, the settlement

6    increased the cash component of the purchase price and also

7    left behind certain claims and causes of action for the

8    estate, and those are the corpus of the trust going forward.

9    The sale closed on June 30th of this year, and the plan is

10   the next step toward winding down the debtors' estates for

11   the benefit of all shareholders.

12          Your Honor, I would just start off by pointing out

13   the case filings, which I think are significant, in order to

14   set a record.

15          On August 7th, the plan proponents -- and this is a

16   joint plan of the debtors and the committee -- filed the

17   motion to approve the disclosure statement on an interim

18   basis and seeking solicitation procedures.  Substantially

19   contemporaneously, the debtors filed the joint plan.

20          On August 20th, the plan proponents filed the

21   amended Chapter 11 combined plan and disclosure statement --

22   excuse me.  On August 24th, the Court entered the order

23   granting the solicitation motion, by which the disclosure

24   statement was approved on an interim basis and solicitation

25   procedures were approved that, among other things, set today

1    as the confirmation hearing.

2            On August 20th, the plan proponents filed an

3    amended plan.

4            And in compliance with the Court's solicitation

5    procedures order, on August 26th, the plan proponents caused

6    the solicitation materials to be mailed out to all creditors

7    and parties-in-interest.

8            Also, on the 27th of August, there was a notice of

9    confirmation hearing that was published in the USA Today

10   National Edition.

11           On August 20th, the plan proponents filed the

12   second -- excuse me.

13           On September 18th, the plan proponents filed a

14   supplement to the plan, as well as the second amended

15   combined disclosure statement and plan.

16           This week, Your Honor, there have been a flurry of

17   filings.  First is the declaration of Mr. Fleming in support

18   of confirmation.  There was also a memorandum of law that was

19   filed yesterday and the proposed confirmation order.

20           Your Honor, this morning we filed an amended --

21   excuse me -- a revised form of confirmation order and a

22   blackline, and we have forwarded a copy to chambers.  We've

23   also circulated it to the Office of the United States

24   Trustee, Mr. Fox, as well as some of the other parties who

25   had provided comments and formal objections.

1          For the facts, Your Honor, Mr. Fleming, the

2     debtors' CRO -- as you will note from Mr. Madron's

3     presentation earlier -- is in the virtual court today and

4     available to testify.  Subject to cross-examination, we would

5     seek to introduce his first-day declaration and his

6     declaration in support of confirmation as direct evidence in

7     support of confirmation today.

8               THE COURT:  Is there --

9               MR. WAXMAN:  Among other things --

10              THE COURT:  Wait.  Why don't we get that into

11    evidence?  Is there objection to the introduction of Mr.

12    Fleming's declaration?

13         (No verbal response)

14              THE COURT:  Okay.  It's admitted without objection.

15         (Fleming First-Day Declaration received in evidence)

16         (Fleming Confirmation Declaration received in evidence)

17              THE COURT:  Does anyone wish to cross Mr. Fleming?

18         (No verbal response)

19              THE COURT:  Okay.  Having heard nothing, you may

20    proceed, Mr. Waxman.

21              MR. WAXMAN:  Thank you, Your Honor.

22         I would just note three items from Mr. Fleming's

23    declaration in support of confirmation:

24              That the liquidation is not likely to be followed

25    by the need for further reorganization of the debtors;

1          That each holder of a claim or equity interest has

2     either accepted (indiscernible) -- excuse me -- accepted the

3     plan or will receive or retain under the plan, on account of

4     such claim or equity interest, property of a value that's not

5     less than the amount that such holder would have received or

6     retained had the debtors been liquidated under Chapter 7.

7          And with respect to the deemed substantive

8     consolidation that's proposed in Section 6.07 of the dis --

9     of the plan, the case law supports the deemed substantive

10    consolidation because the assets and liabilities are so

11    intertwined that separating them would be prohibitive, and

12    any attempt to do so would hurt all creditors.

13         I would note that there would also be significant

14    administrative expenses because of the need to keep the --

15    all of the cases open.  And given that there are over 100

16    cases, the U.S. Trustee fees in this case would be

17    prohibitive.

18         Your Honor, I would also seek to admit into

19    evidence the declaration of John Burlacu of Donlin Recano,

20    who is not here today, although he is available to attend,

21    should anybody wish to cross-examine him.  I would seek to

22    introduce his affidavit of service of the plan and

23    solicitation materials and his voting declaration, which was

24    submitted on Tuesday of this week of direct evidence, subject

25    to cross-examination.

1          THE COURT:  Is there any objection to the

2    introduction of the declaration?

3          (No verbal response)

4          THE COURT:  Admitted without objection.

5          (Burlacu Declaration received in evidence)

6          Anyone wish to cross?

7          (No verbal response)

8          THE COURT:  We're good to go, Mr. Waxman.  Thank

9    you.

10          MR. WAXMAN:  Among other things, Mr. Burlacu would

11    testify that the plan and solicitation materials were served

12    as required under this Court's order.  They are -- that, as

13    set forth in his declaration, which contained a tabulation of

14    all ballots received and demonstrated evidence in support of

15    the plan.  As set forth therein, there were 28 ballots

16    submitted for Class 3, in the aggregate amount of $52,574.35.

17    All 28 voted unanimously to accept the plan.

18          Further, the other class that's eligible to vote,

19    Class 4, which is general unsecured claims, we received 37

20    ballots, in the aggregate amount of approximately

21    $19,592,624.56.  Of those Class 4 ballots -- again, there

22    were 37 -- 32 of them, in the aggregate amount of

23    approximately $15,717,919 and change -- which is 80.22

24    percent in dollar amount and 86.5 percent in ballot number --

25    voted to accept (indiscernible) applied ballots that voted to

1   reject, totaling 13.5 percent in number and approximately

2   19.78 in terms of amount.  So, accordingly, both of the

3   classes voted to accept the plan.

4           Your Honor, I move Mr. Burlacu's declaration into

5   evidence.

6           THE COURT:  Any objection?

7       (No verbal response)

8           THE COURT:  It's admitted without objection.

9           Just to -- I guess, partly, just to show I actually

10  read this stuff, on Page 8 of the motion, I think there's an

11  error, when you talk about the Class 4 ballots received.  You

12  talk about those who accepted, which was 15.7 million of the

13  19.6 million.  But then, when you talk about those who

14  rejected, the 5 claims, you again refer to as 15.7 million,

15  instead of the 4 point whatever million that it would

16  actually be, so ... I assume it's correct --

17          MR. WAXMAN:  Your --

18          THE COURT:  -- in the affidavit, I think it's

19  correct in the affidavit.  I looked at that, I didn't see

20  that there was an error in there, but just to make sure the

21  record is clear.

22          MR. WAXMAN:  Your Honor, you are correct and I

23  apologize.  The number that has voted to reject is

24  approximately 3,874,700 odd dollars.  And again, that's a

25  little under 20 percent.  So the plan voting does vote to

1    accept.

2              THE COURT:  Okay.  Thank you.

3              MR. WAXMAN:  And Your Honor, not to pile on, but

4    there is one housekeeping matter that I was asked to address

5    today.  And again, not that it changes the calculus of the

6    plan voting, but we received a ballot this morning from

7    counsel for Cuisine Solutions.  They voted to accept the plan

8    as a Class 4 claim in the amount of $184,771.90, and they did

9    not check the box for -- with respect to the releases.  We

10   just seek to ask that the ballot be allowed under Rule

11   3018(a).

12             THE COURT:  Okay.  The ballot is allowed.  Thank

13   you.

14             MR. WAXMAN:  Thank you.

15             Before moving on, I -- well, I will address this in

16   the next section.  But Your Honor, as noted earlier, the

17   disclosure statement was approved on an interim basis.  And

18   so, in addition to going forward with respect to confirmation

19   of a plan, the plan proponents are also seeking approval of

20   the disclosure statement on a final basis pursuant to Section

21   1125 of the Bankruptcy Code.

22             Your Honor, just looking down the list of the items

23   that have been disclosed, we would -- it addresses:

24             The circumstances that gave rise to the debtors'

25   Chapter 11 bankruptcy;

1          The debtors' actions and conditions during these
2     cases;
3          The assets of the estate remaining after the sale;
4          An estimate of the estate's liabilities;
5          The proposed treatment of claims and interests
6     under the plan;
7          An analysis as to the distributions creditors will
8     receive from the estate if the estates were liquidated under
9     Chapter 7;
10         A summary of the remaining assets left to be
11     liquidated after the effective date;
12         A disclaimer stating that no statements or
13     information regarding the debtors, their assets, or
14     securities are authorized, other than those (indiscernible)
15     the plan;
16         The relevant sources of information contained in
17     the plan;
18         Information regarding the liquidating trust,
19     including the liquidating trustee and the proposed
20     compensation;
21         Financial information necessary to allow a creditor
22     to decide whether to approve or reject the plan;
23         Information regarding the risks that will be taken
24     by holders of claims and interests prior to voting;
25         A description of the potential avoidance actions

1    and non-bankruptcy litigation that are liquidating trust

2    assets;

3              The rights and abilities of the liquidating trustee

4    to assert, compromise, or distort -- or dispose of causes of

5    action without further notice to creditors or interest

6    holders or authorization of the Court;

7              The tax consequences of the plan.

8              There is also conspicuous language regarding the

9    releases of the debtors and of third parties, exculpation and

10   limitation of liabilities, and the injunction to be entered,

11   and such other and further information as may provide

12   creditors and other interest holders with information needed

13   to determine whether it's in their best interests to vote in

14   support or against the plan.

15             The plan proponents would also ask that the Court

16   take judicial notice of the filings in this case, many of

17   which were referred to by the disclosure statement.

18             And with that, based on the foregoing, the plan

19   proponents request approval of the disclosure statement

20   pursuant to Section 1125 on a final basis.

21             THE COURT:  Does anyone else wish to be heard?

22        (No verbal response)

23             THE COURT:  Okay.  I'm satisfied, based on the

24   record -- and I will take judicial notice of the record --

25   and the presentations today that the disclosure statement

1    complies with the requirements of 1125 of the Code, and I

2    will approve that on a final basis.

3             MR. WAXMAN:   Thank you, Your Honor.

4             With respect to the plan, Your Honor, there are six

5    classified -- six classes of claims, in addition to

6    unclassified claims arising under Sections 507(a)(2),

7    507(a)(8).   Your Honor, those classes are Class 1, which are

8    secured claims; Class 2, priority non-tax claims, both of

9    which are unimpaired and presumed to have accepted.

10            Class 3 is a convenience class of general unsecured

11   claims.   Class 4 are general unsecured claims.   Both Class 3

12   and 4 are impaired and entitled to vote.   Those are the only

13   voting classes in the plan, Your Honor.

14            Class 5, which are intercompany claims; and Class

15   6, which are equity interests, both will receive nothing

16   under the plan and are impaired and conclusively presumed to

17   reject the plan.

18            Before moving forward, I do want to note that there

19   is one significant option in the plan with respect to

20   classification of claims, which the plan proponents noted at

21   the hearing to consider the solicitation of the plan.   Class

22   3 is a convenience class, which includes all claims of less

23   than $2,500.   In order to minimize expenses in connection

24   with the review of such claims and objections, if

25   appropriate, the plan provided that Class 3 claims that are

not the subject of rejection on the effective date will be

allowed claims, for which they will receive 5 percent of the

amount of their claims in full satisfaction on or shortly

after the effective date as practicable.

Holders of claims in excess of 2,500 had the option

of electing into Class 3, but there is a caveat.  If a claim

holder or a holder of a claim that is over $2,500 opted into

Class 3, their cap would be -- their claim would be capped at

$2,500.

Your Honor, there were -- excuse me, as I look at

my notes.  I believe that there were 18 claims that opted

into Class 3.  Excuse me.  There were 16 ballots from holders

of Class 4 that elected to have their claims treated as a

Class 3 claim for election and distribution purposes.  And

those had an aggregate value of approximately $444,713.26.

Your Honor, that has -- let me take a pause and ask

if Your Honor has any questions thus far, before moving on to

approval of the plan under Section 1129.

THE COURT:  No, no questions.  Thank you.

MR. WAXMAN:  Your Honor, based on the foregoing,

the plan proponents respectfully submit that the plan and

disclosure statement (indiscernible) classify the claims and

equity interests under Section 1122.

Further, the plan satisfies the seven mandatory

plan requirements in Section 1123(a)(1) through (a)(7).

1          The discretionary contents of the combined plan and

2     disclosure are appropriate.

3          The releases provided in the combined plan and

4     disclosure statement are proper and appropriate.

5          The debtors have complied with the applicable

6     provisions of Section 1129(a)(2) of the Code.

7          The plan has been proposed in good faith and not by

8     any means forbidden by law.

9          The plan provides for Bankruptcy Court approval of

10    certain administrative payments.

11         Information has been disclosed about the post-

12    emergence directors and officers and is consistent with

13    public policy, thereby satisfying Section 1129(a)(5).

14         The plan complies with the applicable

15    (indiscernible) of the Bankruptcy Code.

16         The plan does not require governmental regulatory

17    approval.

18         The plan is in the best interests of the creditors

19    and interest holders.

20         The plan complies with the statutory mandated

21    treatment of administrative and priority tax liens.

22         The plan was accepted by two impaired classes.

23         The plan is feasible and provides for the payment

24    of all fees under Section 1930 of Title 28.

25         The plan does not modify retiree benefits.

1          And finally, Your Honor, because there are two non-

2    consenting classes, the plan satisfies the cramdown

3    requirements of Section 1129.

4          Your Honor, do you have any questions?

5          THE COURT:  I do not.

6          MR. WAXMAN:  (Indiscernible) --

7          THE COURT:  Thank you.

8          MR. WAXMAN:  -- Your Honor.

9          Just moving on, we do -- we did receive two

10   informal responses and one written objection from GRN.  Your

11   Honor, all three have been resolved.

12         The response that we received from Chubb has been

13   resolved through modifications to the plan.

14         We received comments from counsel for a certain

15   landlord, which addressed certain setoff issues.  And as set

16   forth in Paragraph 46 of the proposed confirmation order, we

17   have added language to address that.

18         We've also received an objection from GRN, who is a

19   warehouseman, who had some of the -- some of the debtors'

20   records, which were transferred to the purchaser, and that

21   has been resolved through Paragraph 27.

22         Your Honor, there was also some cleanup earlier

23   today, and I'm happy to walk Your Honor through the blackline

24   of the proposed order, if Your Honor would like, just to

25   address what those cleanup items are.

1    THE COURT:  I did receive it this morning.  I have

2    looked at the blackline.  I see the handiwork of Mr. Fox in

3    there, I think, the -- relating to the discharge provisions.

4    So no need to walk through it, I've reviewed that.

5    MR. WAXMAN:  Thank you, Your Honor.

6    Unless Your Honor has any questions, we would ask

7    the Court to enter the proposed findings of fact and

8    conclusions of law approving the disclosure statement on a

9    final basis and confirming the plan.

10    THE COURT:  Okay.  Does anyone else wish to be

11    heard?

12    MR. LASTOWSKI:  Your Honor, this is Mike Lastowski

13    of Duane Morris of Chubb.  Can you hear me, sir?

14    THE COURT:  I can, thank you.

15    MR. LASTOWSKI:  Your Honor, I'm sorry.  I tried to

16    connect with Zoom and couldn't get a prompt asking me for my

17    name.  I'll figure that out some other time.  I'm sorry for

18    not having dialed in.

19    I represent Chubb, and we've worked with Mr. Waxman

20    to resolve our informal comments, and we were successful.

21    The language in the plan in Section 6.09 satisfies our

22    comments, and supplemented by Paragraph 44 of the revised

23    order.  Read in harmony, they resolve all the issues that we

24    raised.

25    THE COURT:  Okay.

1          MR. LASTOWSKI:  And I thank him --

2          THE COURT:  Thank you.

3          MR. LASTOWSKI:  -- for his patience and his

4     cooperation.  Thank you.

5          THE COURT:  Thank you.

6          Anyone else?

7     (No verbal response)

8          THE COURT:  Okay.  I'm satisfied, based on the

9     record presented, that the -- I'm sorry.  Does someone else

10     want to speak?  No.  Okay.

11          I'm satisfied, based on the record presented, that

12     the plan was proposed in good faith.  It complies with the

13     requirements of the Code, including Sections 1122, 1123, and

14     1129, and I will enter the order approving the plan.

15          And I'll just add my congratulations to everybody

16     for getting this company from the brink of Chapter 7 to a

17     Chapter 11 resolution that preserves jobs and a company, and

18     hopefully, we'll get past this COVID-19 pandemic stuff and be

19     back to operating restaurants on a regular basis.  Thank you

20     all very much.

21          Is there anything further for today?

22     (Participants speak simultaneously)

23          MR. MADRON:  This is Jason Madron of Richards

24     Layton again.

25          Your Honor, I just wanted to take a brief moment,

1    from the debtors' perspective, to extend our sincerest of

2    thanks to Your Honor, to Your Honor's entire staff and

3    chambers for the Court's guidance and the numerous scheduling

4    accommodations that the Court has granted to us throughout

5    these cases.

6            I want to thank the committee for their tireless

7    professionalism.  The committee, Mr. Waxman, his colleagues

8    at Morris James and his colleagues at Seward & Kissel have

9    been truly exceptional partners in these cases, to bring them

10   to what I think is the absolute best conclusion that we could

11   have hoped for.

12           And then lastly, but certainly not least, Your

13   Honor, I would like to thank Mr. Fox and the Office of the

14   United States Trustee, who, without exception, from day one

15   in these cases -- or even a few days before we filed and

16   working through the first-days, has always worked extremely

17   responsively and constructively with the debtors to move

18   these cases along.  So a lot of folks deserve a lot of thanks

19   for us getting to this result, and the debtors are certainly

20   very grateful for each and every one and we would like to

21   extend out thanks.

22           THE COURT:  Okay.  Thank you, Mr. Madron.

23           Was there somebody else who wanted to speak?

24           MR. WAXMAN:  Your Honor, Mr. Madron beat me to the

25   punch, as usual.  I did want to take a moment and thank the

1    Court and chambers for all of its patience.  And I also

2    wanted to say, although you were hearing from me today,

3    success has a thousand fathers, and in particular, we're here

4    because of the hard work of debtors' counsel, in particular,

5    Mr. Madron.  Mr. Fleming has -- and his colleagues at PwC

6    have been great to work with.

7             Also, I would be remiss were I not to mention the

8    very hard work of my esteemed co-counsel Mr. Gayda and his

9    colleague Ms. LoTempio of Seward & Kissel, and my colleagues

10   Mr. Monzo and Ms. Keilson, all of whom have truly done

11   yeoman's work.

12            I also wanted to thank Mr. Fox for, as always,

13   being very easy to deal with and making himself available,

14   even when he had very little availability.

15            THE COURT:  Okay.  Thank you, Mr. Waxman.

16            Anyone else?

17       (No verbal response)

18            THE COURT:  All right.  Thank you all very much.

19   Congratulations again.  And we are adjourned.

20            COUNSEL:  Thank you, Your Honor.  Thank you, Your

21   Honor.

22       (Proceedings concluded at 10:45 a.m.)

23                              *****

1                        CERTIFICATION

2           I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7

8

9

10   _____        October 6, 2020

11   Coleen Rand, AAERT Cert. No. 341

12   Certified Court Transcriptionist

13   For Reliable