**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>DAILY BREAD WINDDOWN, LLC,<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 20-11266 (JTD)<br><br>(Jointly Administered) |
| Gavin Solmonese, LLC, in its capacity as Liquidating Trustee of PQ Liquidating Trust,<br><br>Plaintiff,<br><br>v.<br><br>US FOODS INC.,<br><br>Defendant. | Adv. No. **Refer to Summons** |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Gavin Solmonese, LLC, in its capacity as Liquidating Trustee[1] of the PQ Liquidating Trust, established in the chapter 11 case of the above-captioned Reorganized Debtor (the "Plaintiff" or "Trustee"), by and through his undersigned counsel, files this complaint (the "Complaint") against US FOODS INC. (the "Defendant") to avoid and recover transfers and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Confirmation Order, and/or Liquidating Trust Agreement.

1

## NATURE OF THE CASE

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all (a) preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of the Reorganized Debtor pursuant to sections 547 and 550 of title 11 of the United States Code (the "Bankruptcy Code") and, subject to proof, (b) transfers that may have been fraudulent conveyances pursuant to sections 548 and 550 of the Bankruptcy Code.

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all its rights and the rights of the Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in and relates to cases under title 11, in the United States Bankruptcy Court for the District of Delaware (the "Court"), originally captioned *In re*: *PQ New York, Inc., et al.,* Case No. 20-11266 (JTD), pursuant to 28 U.S.C. §§ 157 and 1334(b).

4. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548 and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters

contained herein.

6. Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1409.

7. Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that it does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**PROCEDURAL BACKGROUND**

8. On May 27, 2020 (the "Petition Date"), PQ New York, Inc. ("PQ NY") and 104 of affiliates (collectively, the "Debtors") commenced a voluntary case under chapter 11 of the Bankruptcy Code.

9. On May 28, 2020, the Court entered an order authorizing the joint administration of the Debtors' chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b). [Docket No. 38][2].

10. On September 18, 2020, the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases filed the *Second Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of PQ New York Inc. and Its Affiliated Debtors* (the "Disclosure Statement" and "Plan," respectively). [Docket No. 563].

11. On September 25, 2020, the Court entered its *Findings of Fact and Conclusions of Law (I) Approving Disclosure Statement on a Final Basis; and (II) Second Amended Combined*

---

[2] All docket items referenced are from Case No. 20-11266, under which the Debtors' bankruptcy cases were jointly administered.

3

*Disclosure Statement and Chapter 11 Plan of Liquidation of PQ New York, Inc. and Affiliated Debtors Dated September 18, 2020* (the "Confirmation Order"). [Docket No. 597].

12. The effective date of the Plan occurred on September 30, 2020 (the "Effective Date"). [Docket No. 604]. In accordance with the Plan and Confirmation Order, as of the Effective Date, among other things, (a) the Debtors continued in existence as the Reorganized Debtor and (b) the Trustee was appointed with the power to exercise the rights, power, and authority of the Liquidating Trust (the "Trust") under appliable provisions of the Plan, that certain Liquidating Trust Agreement, and bankruptcy and non-bankruptcy law.

13. Pursuant to the Confirmation Order and Section 6.03 of the Plan, following the Effective Date, the Causes of Action (as that term is defined in the Plan and Confirmation Order), including avoidance actions under chapter 5 of the Bankruptcy Code, were vested in and transferred to the Trust, and the Trustee may assert, compromise or dispose of such causes of action without further notice to Creditors or Interest Holders or authorization of the Bankruptcy Court. [Docket No. 597, 563].

14. Pursuant to Sections 3 and 4 of the Plan, General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

### THE PARTIES

15. Pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement, Plaintiff was appointed as the Trustee. Plaintiff is authorized and has standing, among other things, to prosecute and settle certain causes of action under chapter 5 of the Bankruptcy Code, including this avoidance action.

16. Upon information and belief, Defendant was, at all relevant times, a vendor or

4

creditor that provided grocery supplies to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 9399 W. Higgins Road, Suite 500, Rosemont, IL 60018. Plaintiff is informed and believes and on that basis alleges that Defendant is a corporation residing in and subject to the laws of the State of Illinois.

## FACTUAL BACKGROUND

17. As thoroughly discussed in the Disclosure Statement and Plan, the first Le Pain Quotidien opened in 1990. The Company quickly expanded its footprint, and in 1997, the first Le Pain Quotidien location opened in the U.S. with its flagship bakery on Madison Avenue in New York City. [Docket No. 563] At its peak, the Company operated over 290 Le Pain Quotidien locations throughout the world, with 98 locations in the U.S. and headquarters in New York. Prior to the Petition Date, the Debtors employed approximately 2,500 individuals.

18. In 2018, the Debtors generated sales of $175 million and EBITDA of $4.4 million. The Debtors, however, experienced eroding same stores sales in the following year, resulting in $153 million in sales and negative $16.8 million in EBITDA for 2019 while suffering from the negative impact of expensive leases and underperforming store locations. Absent business, operational, and restructuring initiatives, the Debtors' business forecasts indicated a continuing negative EBITDA trend through 2023. These forecasts were further reduced by the unforeseen and devastating economic effects of COVID-19 on the restaurant industry.

19. Several factors contributed to the Debtors' declining numbers prior to the pandemic, including, but not limited to, significant pressure from increased competition in the

Debtors' primary markets, historical lack of investment at the store level, supply chain and staffing challenges.

20. During the second half of 2019, the Debtors began pursuing a series of initiatives intended to address issues facing the Debtors' business, but the COVID-19 pandemic significantly and adversely affected the U.S. food and restaurant industry. While the Debtors' restructuring plans contemplated the closing of certain underperforming locations, by March 22, 2020, the Debtors shuttered all their restaurant locations and terminated all but a handful of employees who were necessary to oversee the sale of the business (or an orderly wind down if not possible) through a bankruptcy proceeding.

21. In addition to the operational initiatives discussed, in September 2019, the Company began evaluating potential strategic and restructuring alternatives with regards to its European and U.S. businesses. In connection with this evaluation, the Debtors engaged PricewaterhouseCoopers LLP and Richards, Layton & Finger, P.A. to assist them in exploring and evaluating various strategic alternatives. The Debtors also retained RCS Real Estate Advisors to assist them in evaluating their lease portfolio.

22. With the assistance of their professionals, the Debtors concluded a bankruptcy filing was necessary given (i) the difficulty in renegotiating lease terms outside of bankruptcy; (ii) the ongoing funding needs of the underperforming restaurants; and (iii) the realization that an out-of-court transaction would require significant funding from a potential purchaser or investor.

23. Prior to the Petition Date, the Debtors maintained business relationships with various business entities, through which the Debtors purchased, sold, received, and/or delivered goods and services. The Debtors also paid for services used to facilitate its business.

24. As of the Petition Date, the Debtors utilized a cash management system (the "Cash Management System").[3] Historically, each of the Debtors' approximately 98 Le Pain Quotidien restaurants collected and deposited daily cash receipts from their restaurant operations into its respective restaurant-level collections account (collectively, the "LPQ NY Collections Accounts") which consisted of approximately 108 bank accounts (the "Bank Accounts") with approximately (i) one hundred (100) maintained at Bank of America, N.A., ("BOA") (ii) six (6) with Wells Fargo Bank, N.A., ("Wells Fargo") and (iii) one (1) with Citibank, N.A. ("Citi")[See Docket No. 6]. All the BOA LPQ NY Collections Accounts were swept daily, while the Wells Fargo and Citi LPQ NY Collections Accounts were swept monthly into an operating concentration account at BOA ending in 4873 (the "BOA Concentration and Operating Account") from which disbursements to vendors and rent payments to a select number of landlords were made. Then, on either a weekly or twice weekly basis, as necessary, the balance of the BOA Concentration and Operating Account was manually transferred into an additional operating concentration and disbursement account maintained at KBC Bank USA. Given the cessation of operations at the Debtors' restaurant locations, the Debtors no longer utilized or had need for any of the LPQ NY Collections Accounts and were in the process of closing all such accounts as of the Petition Date.

25. The Debtors' books and records indicate that during the Preference Period (hereinafter defined), most disbursements were made by PQ NY from Bank of America checking account ending in 4873.

---

[3] See Motion of Debtors' For Interim and Final Orders (i) Authorizing Continued Use of the Debtors' Existing Cash Management System and Bank Accounts; (ii) Authorizing Continued Performance Continued Performance of Certain Intercompany Transactions; (iii) Waiving Certain United States Trustee Requirements; and (iv) Granting Related Relief (the "Cash Management Motion") [Docket No.6].

26. During the ninety (90) days before the Petition Date, that is between February 27, 2020 and May 27, 2020 (the "Preference Period"), the Debtors continued to pay their business obligations, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, or otherwise to various entities.

27. Upon information and belief, during the course of their relationship, the Defendant and one or more of the Debtors entered into agreements and business relationships, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant to one or more of the Debtors as described in the "Parties" section of this Complaint. The payments to the Defendant in respect of the Agreements during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Payment Number," "Payment Date" and "Payment Amount."

28. One or more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $236,609.58 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference.

29. Plaintiff is seeking to avoid all transfers of an interest of the Debtors' property made by the applicable Debtor(s) to Defendant within the Preference Period.

30. On or about June 3, 2021, Plaintiff, through counsel, sent a demand letter (the "Demand Letter") to Defendant, seeking a return of the Transfer(s). The Demand Letter indicated the potential statutory defenses that may be available to Defendant pursuant to section 547(c) of

the Bankruptcy Code and requested, if Defendant had evidence to support any affirmative defenses, that it provide this evidence so Plaintiff could review the same.

31. Plaintiff, through its advisors, conducted a review of relevant information derived from the Debtors' books and records to determine whether certain pre-petition transfers qualified as preferential transfers. Plaintiff also reviewed, *inter alia*, the Debtors' docket and any claims scheduled by the Debtors or proofs of claim filed by Defendant to identify any reason that may disqualify a pre-petition transfer from treatment as a preferential transfer.

32. Further, based upon Plaintiff's review of the information, if any, provided by Defendant prior to filing this Complaint, and after performing its own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), Plaintiff has determined that Plaintiff may avoid some or all of the Transfers even after taking into account Defendant's alleged affirmative defenses.

33. Pursuant to section 547(g) of the Bankruptcy Code, Defendant bears the ultimate burden of proof on any affirmative defenses to the Transfers. Plaintiff does not concede the validity of any alleged defenses, reserves all rights in connection therewith and leaves Defendant to satisfy its burden.

34. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s); (ii) additional transfers; (iii) modifications of and/or revision to Defendant's name; (iv) additional

defendants; and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

## COUNT I

**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

35. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this First Claim for Relief.

36. As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, the Debtor(s) identified on Exhibit A made Transfers to or for the benefit of Defendant in an aggregate amount not less than $236,609.58.

37. Each Transfer was made from a Disbursement Account as described *supra,* and constituted transfers of an interest in property of the transferring Debtor(s) as identified on Exhibit A.

38. Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor(s) identified on Exhibit A the goods and/or services identified in this Complaint and in the Agreements, as more fully set forth on Exhibit A hereto, for which the Debtor(s) identified on Exhibit A were obligated to pay following delivery in accordance with the Agreements.

39. Each Transfer was to or for the benefit of a creditor within the meaning of section § 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) to Defendant.

40. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s) as set forth on Exhibit A hereto.

41. Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

42. Each Transfer was made during the Preference Period, as set forth on Exhibit A.

43. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' cases were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtors' liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

44. In accordance with the foregoing, each Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

## COUNT II
**(Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))**

45. Plaintiff hereby incorporates all previous allegations as though fully set forth herein, to the extent they are not inconsistent with allegations contained in this Second Claim for Relief.

46. To the extent one or more of the Transfers identified on <u>Exhibit A</u> was not made on account of an antecedent debt, was an advance or prepayment for goods and/or services, which were never provided or which the value of such goods and/or services did not constitute reasonably equivalent value in exchange for such Transfer(s), and/or was a debt incurred by an entity other than the paying Debtor but paid for by another Debtor. Plaintiff pleads in the alternative that the Debtor(s) making such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "<u>Potentially Fraudulent Transfers</u>"); and

    A.    The Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

    B.    The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital; or

    C.    The Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

47. Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

## COUNT III
**(Recovery of Avoided Transfers – 11 U.S.C. § 550)**

48. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

49. Plaintiff is entitled to avoid the Transfer(s) pursuant to section 547(b) of the Bankruptcy Code and/or any Potentially Fraudulent Transfers pursuant to section 548 of the Bankruptcy Code (collectively, the "Avoidable Transfers").

50. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

51. Pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## COUNT IV
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

52. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Claim for Relief.

53. Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

54. Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

55. Pursuant to section 502(d) of the Bankruptcy Code, any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff must be

disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

56. Pursuant to section 502(j) of the Bankruptcy Code, any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant the following relief against Defendant:

A. On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to sections 547(b), 548, and 550(a) of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B. On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Debtors until Defendant returns the Avoidable Transfers to Plaintiff pursuant to sections 502(d) and (j) of the Bankruptcy Code; and

C. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: May 11, 2022

                          **JOYCE, LLC**

                          */s/ Michael J. Joyce*
                          Michael J. Joyce, Esq. (No. 4563)
                          1225 N King St
                          Suite 800
                          Wilmington, DE 19801
                          Telephone: (302) 388-1944
                          mjoyce@mjlawoffices.com

                          Counsel for Gavin Solmonese, LLC, in its capacity as trustee of the PQ Liquidating Trust